Shannon MORENO, Plaintiff,

v.

**HEALTH PARTNERS HEALTH PLAN,** an Arizona corporation, and Luis Aguilar, M.D. and Jennifer Aguilar, husband and wife, Defendants.

No. CIV. 97–796 TUC ACM.

United States District Court, D. Arizona.

April 14, 1998.

Thomas G. Cotter, Haralson, Miller, Pitt & McAnally, P.L.C, Tucson, AZ, for Plaintiff.

John C. West, Richard K. Delo, Jennings, Strouss & Salmon, P.L.C., Phoenix, AZ, for Defendants.

## ORDER

MARQUEZ, Senior District Judge.

Plaintiff Shannon Moreno (Plaintiff) brings this action against Defendants Health Part-ners Health Plan (Partners) and Luis Aguilar, M.D. (Aguilar), collectively "Defendants," alleging medical malpractice.

### I. Plaintiff's Claim

A plain reading of the Complaint shows that the Plaintiff is not seeking any medical benefits due her under the terms of her health plan, nor is she seeking to clarify any rights to future benefits under the terms of her plan. There is no request to enjoin the defendants, and there is no request for equitable relief.

The allegations are nothing more nor less than recitations of traditional state law negligence claims. Each Defendant is alleged to be a healthcare provider. Each Defendant is alleged to have fallen below the applicable standard of care, either acting individually or through agents and employers. Each is alleged to have caused damage to the Plaintiff. Partners is alleged to be both directly liable for its own negligence (the creation of the substandard care plan by Aguilar) and vicariously liable for the negligence of the physicians who implemented that substandard care plan. Aguilar is alleged to be directly negligent for his role in creating the substandard plan.

While the Plaintiff may not defeat removal "by omitting to plead necessary federal questions in a complaint" (*Franchise Tax Bd. v. Construction Laborer's Vacation Trust*, 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)), the defendant may not defeat remanding by inserting language necessary to raise federal questions into the plaintiff's complaint. "Jurisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 809, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). The plaintiff is the master of her complaint, not the defendant. See *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Easton v. Crossland Mortgage Corp.*, 114 F.3d 979, 982 (9th Cir.1997).

Defendants' characterization of Plaintiff's Complaint as alleging a "refus[al] to provide certain medical benefits that she was allegedly entitled to under a medical benefit plan

issued by [Partners]" and that these benefits were "at issue" (Notice of Removal at ¶s 7–8) is inaccurate. Defendants' statement that "Plaintiff's claims against [Partners] are, in essence, claims for benefits or for the negligent administration of benefits falling within ERISA § 501(a)(1)(B)" (Defendants' Response to Motion to Remand at ¶ 2) contorts the simpler truth.

## II. Removal and Preemption Under ERISA

A motion to remand requires the court to assess whether it has removal jurisdiction over an action. As a general rule, an action is removable to a federal court only if it might have been brought there originally. 28 U.S.C. § 1441(a).

Defendants assert that ERISA confers jurisdiction over this action under 29 U.S.C. § 1132(e) and that removal was proper. Defendants assert that Plaintiff's Claim falls within ERISA § 502(a)(1)(B).

■ Under the well-pleaded complaint rule, "a defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." *Franchise*, 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (emphasis in original). "[A] case may not be removed to federal court on the basis of a federal defense, *including the defense of pre-emption...*" *Id.* at 2848. However, "if a federal cause of action *completely* preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law" (emphasis added). *Id.* at 2854. This includes causes of action "within the scope of the civil enforcement provisions of § 502(a)" of the Employee Retirement Income Security Act of 1974 (ERISA). *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

In *Metropolitan*, a fired employee's state law suit to restore medical insurance benefits, among other things, was found to fall completely under § 502(a)(1)(B).[1] The Ninth Circuit has further identified claims falling under 502(a)(3)[2] as coming within this exception to the well-pleaded complaint rule. *Sorosky v. Burroughs Corporation*, 826 F.2d 794, 799 (9th Cir.1987).

■ Section 514(a) provides that ERISA "shall supersede any and all State laws insofar as they ... relate to any employee benefit plan" covered by the statute. This has been given wide construction by the Supreme Court: "[R]elates to" is to be "given its broad common-sense meaning." *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). "[T]he express preemption provisions of ERISA are deliberately expansive." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46, 107 S.Ct. 1549, 95 L.Ed.2d 39. "A state law claim may 'relate to' an employee benefit plan, and therefore be preempted, even if the law was not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

Defendants rely on *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321 (5th Cir. 1992) *cert. denied*, 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992) and *Spain v. Aetna Life Ins. Co.*, 11 F.3d 129 (9th Cir. 1993), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 340 (1994). In *Corcoran*, parents brought a negligence action for the wrongful death of their infant after the defendant had recommended denying hospitalization and authorizing ten hours per day of home nursing care for a high-risk pregnancy. At a time when the nurse was not on duty, the fetus went into distress and died. The Fifth Circuit determined that United had made a medical determination incident to a

1. ERISA § 502(a)(1)(B) provides that a civil action may be brought by a participant or beneficiary to recover benefits due him under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

2. ERISA § 502(a)(3)(A) and (B) provide that a civil action may be brought by a participant,

beneficiary, or fiduciary to enjoin any act or practice which violates any provision of this subchapter or terms of the plan, or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of this subchapter or the terms of the plan.

benefit determination and ruled the claims preempted by ERISA as "they relate[d] to" the processing of plan benefits.

In *Spain*, the wife and daughter of an ERISA plan participant sued Aetna for wrongful death. Aetna had originally authorized a 3–part bone marrow transplant procedure. Spain received the first two parts, then Aetna withdrew authorization for the last part, which Spain could not afford to pay himself. The Spains sued to compel authorization, and two days after notification of the suit, Aetna authorized the last part of the procedure. The plaintiffs argued that the delay was negligent and the cause of the Spain's subsequent death. The court found that "ERISA preempts Appellant's wrongful death action because the state law in its application directly 'relates to' the administration and disbursement of ERISA plan benefits." *Id.*, 11 F.3d at 131. "A state cause of action relates to an ERISA benefit plan if operations of the law impinges on the functioning of an ERISA plan [citation omitted]." *Id.*

In both *Corcoran* and *Spain*, the defendants were third parties authorizing payments for certain procedures. In the present case, Defendants are accused of being responsible for the design and delivery of a procedure which injured the Plaintiff. Who paid for the procedure is inconsequential.

Defendants cite cases from other circuits which have applied the broad preemptive reach of ERISA. *Kuhl v. Lincoln National Health Plan*, 999 F.2d 298 (8th Cir.1993), *cert. denied*, 510 U.S. 1045, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994) (Refusal to precertify heart surgery followed by death. Medical malpractice, emotional distress, tortuous interference of right to contract for medical care, and breach of contract, held preempted by ERISA); *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir.1995) (State law claims for wrongful death, improper refusal to authorize benefits, medical malpractice, and insurance bad faith arose from defendant's refusal to authorize psychiatric benefits and therefore related to the patient's ERISA plan.); *Hermann Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d 1286 (5th Cir.1988) (claims for estoppel, negligence,

breach of fiduciary duty, breach of contract and fraud against HMO preempted).

Defendant's reliance on the above cases is misplaced in light of the more recent landmark Supreme Court case, *New York State Conference of Blue Cross & Blue Shield v. Travelers Insurance Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). In *Travelers* the Supreme Court sought to narrow this expansive view of what "relates to" ERISA for the purposes of preemption. "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere' [reference omitted]. But that, of course, would be to read Congress's words of limitation as mere sham, and to read the presumption against preemption out of the law whenever Congress speaks to the matter with generality." *Id.*, at 655, 115 S.Ct. 1671. "We must simply go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.*, at 656, 115 S.Ct. 1671.

"In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employee benefits from accumulated funds. To that end, it established extensive reporting, disclosure, and fiduciary duty requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator." *California Div. of Labor Standards Enforcement v. Dillingham Construction*, 519 U.S. 316, 117 S.Ct. 832, 838–839, 136 L.Ed.2d 791 (1997), quoting *Massachusetts v. Morash*, 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989).

Congress intended ERISA to preempt at least three categories of state law that can be said to have a connection with an ERISA plan: (1) laws that mandate employee benefit structures or their administration, (2) laws that bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby func-

tioning as a regulation of an ERISA plan itself, and (3) laws providing alternative enforcement mechanisms for employees to obtain ERISA plan benefits. *Coyne & Delany v. Selman*, 98 F.3d 1457, 1468 (4th Cir.1996).

The Supreme Court teaches that we must "work on the assumption that the historic police powers of the States were not to be superceded by the Federal Act unless that was the clear and manifest purpose of Congress. [citations omitted]." *Travelers*, 514 U.S. at 655, 115 S.Ct. 1671. "[H]istoric police powers of the State include the regulation of matters of health and safety [citation omitted]." *De Buono v. NYSA–ILA Medical and Clinical Services*, 520 U.S. 806, ——, 117 S.Ct. 1747, 1751, 138 L.Ed.2d 21 (1997). "Nothing in the language of [ERISA] or the context of its passage indicates Congress chose to displace general health care regulation [citations omitted]." *Travelers*, 514 U.S. at 661, 115 S.Ct. 1671.

In addition, myriad state laws of general applicability may impose some burdens on the administration of ERISA plans and still not "relate to" them within the meaning of the ERISA statute. *Buono*, 520 U.S. at ——, 117 S.Ct. at 1752. The Supreme Court gives the example of quality standards in a hospital which would effect the relative costs of a plan. *Travelers*, 514 U.S. at 660, 115 S.Ct. 1671.

Cases since *Travelers* have been much less prone to find preemption under ERISA. *Pacificare of Oklahoma v. Burrage*, 59 F.3d 151 (10th Cir.1995) (a vicarious liability medical practice claim based on substandard treatment by an HMO is not preempted); *Rice v. Panchal*, 65 F.3d 637 (7th Cir.1995) (medical malpractice against two doctors and against health plan does not rest upon the terms of an ERISA plan and is therefore not preempted); *Jass v. Prudential Health Care Plan*, 88 F.3d 1482 (7th Cir.1996) (negligence action based on a vicarious liability theory relied on the existence of an ERISA plan and found to be preempted); *Coyne & Delany v. Selman*, 98 F.3d 1457 (4th Cir.1996) (malpractice claim is not preempted because it does not 'relate to' an employee benefit plan within the meaning of ERISA's preemption provision).

Plaintiff has relied on the post-*Travelers* case, *Dukes v. U.S. Healthcare*, 57 F.3d 350 (3rd Cir.1995). In *Dukes*, an HMO was sued for damages for injuries arising from the medical malpractice of HMO-affiliated hospitals and medical personnel. The appellate court made a distinction between the quantity of care received (which it would relate to the ERISA plan) and the quality of the care received. The court found "nothing in the legislative history suggesting that § 502 [ERISA] was intended as a part of a federal scheme to control the quality of the benefits received by plan participants." *Id.* at 357. The case was remanded to state court.

Plaintiff's malpractice claim goes to the *quality* of care received. If we were in the Third Circuit, the case would be remanded to the state courts by following *Dukes*. In the Ninth Circuit the same result is achieved, but by a different path.

### III.  *Ninth Circuit ERISA Analysis Since Travelers*

■ The proper analysis by which to determine whether a particular state law claim is preempted by ERISA has been recently given by the Ninth Circuit. "[W]here state law claims fall outside the three areas of concern identified in Travelers, arise from state laws of general application, do not depend on ERISA, and do not affect the relationships between the principal ERISA participants; the state law claims are not preempted." *Geweke Ford v. St. Joseph's Omni Preferred Care Inc.*, 130 F.3d 1355, 1360 (9th Cir.1997) quoting *Arizona State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715 (9th Cir.1997).

■ Medical malpractice is a state common law claim. Applying the *Travelers* three-part test, the ability to sue on a medical malpractice claim does not mandate employee benefit structures or their administration, nor does it bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself, nor does it provide an alternative enforcement mechanism for employee to obtain ERISA plan benefits. Malpractice ac-

tions are *post facto*, obviating the last test. The threat of malpractice actions might bind plan administrators to making choices that were not willfully or recklessly injurious, but such choices are evaluative and not particular, and Congress has expressed no desire that ERISA be used to degrade the quality of healthcare.

Continuing with the analysis of the Ninth Circuit in *Geweke*, medical malpractice actions are grounded in state common law of general application to any practitioner of medicine whether or not arranged, paid for, or employed by an employer provided benefit plan. The possibility of medical malpractice actions do not affect the relationships between the principal ERISA participants.

Under the analysis adopted by the Ninth Circuit, medical malpractice actions are not preempted. This is reinforced by the Supreme Court referring to the general regulation of health and safety as examples of historic powers of the State which have not been superceded by Federal Act. See *Travelers* 514 U.S. at 660, 115 S.Ct. 1671, *De Buono*, 520 U.S. at ——, 117 S.Ct. at 1751.

■ Plaintiff accuses the Defendants of medical malpractice. Whether Defendants were engaged in the practice of medicine as defined by the State of Arizona and, if so, whether their actions were the proximate cause of injuries sustained by the Plaintiff are not issues which will be ruled on here.

The Court finds no relation between an action for medical malpractice and the recovery of benefits or the clarification of rights to future benefits under an ERISA plan. There is no complete preemption of a medical malpractice action by ERISA, therefore the present action must be remanded.

Accordingly,

**IT IS ORDERED** that the Plaintiff's Motion to Remand (Document No. 7) is GRANTED.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss State Law Causes of Action (Document No. 2) is DENIED.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Rule 56(f) Relief and Motion to Strike the Affidavit of Brenda Neal (Document No. 18) is DENIED.

**IT IS FURTHER ORDERED** that the Defendants' Request for Hearing on Motion to Dismiss State Law Causes of Action (Document No. 4) is DENIED.